Mr. Lopez's prior 2009 sentence was based on legal error, but for that error he would not now be sentenced to over double the guideline sentence for his admittedly mind run circumstances. We can't restore to him the months taken by the first erroneous sentence, but we can ensure going forward that he's given a fair and just sentence and not subjected to a compounding of the prior injustice. Now, I understand your point in that, but I have a problem because the problem is that the district court in this case, what you're doing is collaterally attacking the sentence that was not appealed and not dealt with on its own terms. The district judge in this case is sentencing based on the current violation, re-entry. He looks at the record and he says, this guy just came off of a, what, 27 month sentence for whatever reason, as he says it was imposed. The fact is he served 27 months and he turns around, gets out, and he turns around and he comes back across. And so the district court going through the assessment says, you know, 27 months didn't make an impression on him. And the deterrent effect, deterrence is a reasonable aspect of sentencing. And therefore, I'm going to sentence him to, I'm going to vary upward because he doesn't get the message. So he needs a longer time in prison to get the message that he can't keep coming across. So what difference does it make that the unappealed prior sentence was invalid? It's the fact of his having been in prison, as I read the district court, that is impressing the district judge. I need to give this guy more time in prison so he gets the message. Your Honor, two answers to that. One is that there are cases that the government has cited and this court has recognized that incremental deterrence can be done on an incremental basis. But there was also evidence presented below here that that is contrary to the empirical evidence. That in fact, incremental deterrence does not have the effect of deterring. And in fact, it had the opposite effect in some of the studies showed. And those studies were cited to the district court in the sentencing memo here. But he's not bound by them. He's not bound by them. But what he is bound is by under 3553A5, he is bound to consider the pertinent policy statements of the commission. And the commission holds exactly in accordance with these academic studies that there is no correlation between the length of the sentence and the risk of recidivism. Was the policy statement cited to the district court? No, that policy statement wasn't, Your Honor. That is something that the court was obligated to consider under Gall and Cardi. Gall said we have to consider all of the statutory sentencing factors. The court had an independent duty to do that. What about specific deterrence here? The specific deterrence, I think that's an even better argument that this shouldn't apply in this particular case because he was given an illegal sentence to begin with. And now to increment above a sentence which was, everyone admits now, was unjustly, unlawfully imposed because it was based on a plus 16 enhancement which didn't apply. We're actually in a situation that Gall discusses that you can actually cause derision for the law, not respect for the law, by imposing a sentence which is in excess. Now, of course, that wasn't known at the time that the original sentence was imposed, but we know it now. And it makes no sense to compound the error. If I could just, the Supreme Court in the case Burgett v. Texas mentions this in the context of a Sixth Amendment right to counsel error. They say that, worse yet, since the defect in the prior conviction was the denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right. We're essentially compounding the original error by taking as a basis for the increment a sentence which everyone agrees, even the district court agreed, was excessive and was not legally valid. His sentence at the time, the original 2009 sentence, should have been in the range of one to seven months. Even if we impose the nine-month increment that the district court applied here, and as I argue elsewhere, there was no basis or error. That seems to be just an arbitrary number that was chosen. But even if we take that, then it would have put him around in the 15, 16-month range, which the defense asked for here. So if he incremented, even if an increment does have a rational basis and does show, the empirical studies show that that's not necessarily true, still the increment from the sentence that actually should have applied to him in the first place would have been a fair and just sentence because it would have fallen within the guidelines that applied on his individual facts, his criminal history, and his offense level. What do you say the empirical data shows? I'm not sure I follow that. The empirical data shows that incremental increase of sentences does not deter. It's not necessarily true that the longer the sentence, that the more deterrence effect you have. So recidivists should not be treated more harshly than first-timers? Is that the import of this? Well, what the studies show is that certainty of punishment is more effective than the length of the actual sentence. Well, that's one principle, but what about how we distinguish between first-timers and career criminals, recidivists? Your theory is we shouldn't take into account a prior record? Well, I think because there are separate provisions, for instance, the separate provisions in the guidelines for career offenders, that is something which the Sentencing Commission, which has much greater expertise on analyzing recidivism and the effects of sentencing on recidivism, they've made separate provisions for that. How do you account for that in the empirical data? Well, that I can't say what specific special questions apply to. Why would we treat recidivists more harshly than first-timers if there isn't some logic to doing so? I would say, without knowing for sure, Judge Sullivan, I'd say probably what's different about career offenders is that the premium on protecting the public and incapacitating the offender is much higher than in an ordinary possible recidivism case. When we've had just ordinary recidivism, someone just keeps coming back, for instance, illegal entry. If someone keeps coming back into the country, and that's all it is, a person comes back to work, then the concern for protection of the public and incapacitating is not that high. But when we have a career offender that has serious prior felonies and repeated ones, then maybe the premium on incapacitation and protection is higher, and that overcomes the information that would have gone just to pure deterrence. But when we have an ordinary case like this, one which the district court described as a mind-run case, that in those circumstances, the Sentencing Commission has found that what is important for deterrence and addressing the risk of recidivism is the recency and the frequency of the prior conviction, prior sentences. And on that basis, the court says that that's already factored into the Chapter 4 sentencing tables, and they would find that on the matrix of offense level, seriousness of the crime, and prior history, that in this case, Mr. Lopez should have gotten, in the normal mind-run cases this was, should have gotten a sentence somewhere in the 15 to 21 months. And that's an increase over the 1 to 7 months that he got, proper increase from the first sentence. Because he did it before, he's done it again, he's shown he has recidivism, that's already taken account in the elevated sentence which the guidelines produced. Now to go above that, to go above that by starting from the standpoint of a sentence which is acknowledged to be legal error, and increasing it beyond that by an arbitrary 9 months, that's an excessive sentence. That's by definition a substantively unreasonable sentence. Do you want to save some time? Yes, thank you, Your Honor. Good morning, may it please the Court. Joseph Orobon on behalf of the United States. In looking at the substantive reasonableness of the sentence, the recidivist argument that was just being made, if you look at the PSR, you go back through on pages, this is PSR pages 3, 4, and 5, and you look at how many times Mr. Lopez came back into the United States illegally. He was deported in September of 2003. He was deported in February of 2004, March of 2005, and August of 2011. And if you look at his criminal history, you'll see an individual who is deported, comes back, commits another offense, is deported, comes back, and commits another offense. And that is exactly what Judge Miller was doing in looking at the substantive reasonableness of the prior sentence as a deterrent. Counsel just argued that that's already taken into account by the incremental nature of the guideline calculation. Why isn't that the response? Well, I think as part of counsel's argument was this compounding error. And if you look at the submission that counsel provided, which is docket number 10, and you look at page, the plea agreement in this particular case, and you look at page 27 of 70, counsel argues the error is on the fault of Judge Marsh in the District of Oregon. But it's not, actually. If you look at this plea agreement, the defendant is complicit in this error, or this compounding of this error, because section 5 clearly states that the parties agree that the appropriate sentence under Title 18 United States Code Section 3553A is 27 months' imprisonment. And then you look at the next page, 28 of 70, and you'll see that the court in this particular case was bound by that plea agreement. If they accepted the plea agreement under Rule 11C1C, the court was bound to impose that 21-month sentence. So the district judge in Oregon didn't use any discretion whatsoever. As a matter of fact, when he accepted this plea agreement, he was bound to impose a 27-month sentence that was agreed upon by the defendant and the government as part of the plea negotiation. And so it wasn't appealed. And so to go back to answer your question, essentially what's happening is specific deterrence, recidivism, were the important factors that Judge Miller was looking at under the substantive reasonableness argument. And I think that this particular case is much like, if you take the arguments of counsel that, going along with this compounding, if you look at United States v. Cruz Perez, which the government cited in its brief, 567F3-1142, that's a case where the government had recommended and the PSR had recommended a drug trafficking enhancement. But the district court determined that that wasn't appropriate and it was improper and lowered the guideline range to 21 to 27 months, but then doubled the prior sentence of 24 months and imposed a sentence of 48 months. And this court upheld that as reasonable, as substantively reasonable, for the very same reasons Judge Miller did in this case, which was for specific deterrence and for the impact of recidivism of this particular defendant. In fact, I think there's a nice circuit case of, it was United States v. I think it was Evan Martinez, where they used that plain error analysis because that error in the district court wasn't objected to. What was the case you cited just before Evans Martinez? It was Cruz Perez, and it was cited in the government's brief. If you look at the two cases that, now shifting gears to the procedural error that allegedly occurred in this case, if you look at the two cases that are cited by the appellant in Hodge in the Eighth Circuit and Engle in the Fourth Circuit, I think the problem or the distinction between those two cases and this particular case is first, in Hodge, the district court did commit an error, and it was plain. They applied the 3553A factors before taking into consideration a 5K1.1 motion. That was error. That was completely misapplying the guidelines. They did it after they applied the 3553A factors. In Engle, what ended up happening was, I think that the record itself was insufficient. The Fourth Circuit looked at the record and said, there's not enough information here to determine whether or not the court took into consideration that policy statement. In fact, in Engle, the government argued the policy statement and said, look, we don't bring that many tax cases, and when we do, they're egregious, and so you should impose a sentence, a prison term in this particular case. So the government actually fronted that policy statement to the district court, but the district court placed overemphasis on the restitution aspect and therefore departed all the way down to a probationary sentence. So again, I think that there was no procedure error here. It certainly wasn't plain. There wasn't any error whatsoever. In fact, I think Judge Miller did an excellent job of inviting counsel to explain that error, and that error was explained as being, you didn't take into account the adequacy of our argument, and Judge Miller came back and said, well, you might not, as a substantive matter, think that I adequately addressed it, but was there something that I didn't address, and continued to invite counsel to provide what it was that the court actually did not address, and the policy statements never came up, so unless there are questions, I would submit on the government's briefing. Thank you. Thank you. I'll try to make three quick points. Number one, the Oregon case was based solely on legal error, and in fact, the district court invited the defense to say, actually put the burden on the defense to show, well, that it wasn't based on something else, that the 27 months wasn't based on some other factor, but we now know that, of course, that the only reason it was 27 months was because of the plus 16. The government refers to these other cases. None of them involved a sentence, an incremental deterrence increase based on an erroneous sentence. None of them dealt with that fact. That's unique here. The Hodge and Engel cases, well, those are, they'll say that you have to look at these policy statements. In fact, this court has said pretty much the same thing in Bragg, where the court varied and didn't explain why he varied, in fact, why he didn't agree with the commission's finding to the contrary, and that was considered error. And finally, disparity with other cases is really important here because other people who have exactly the same offense level, 10 offense level, as Mr. Lopez, and the same criminal history, Category 4, will get a sentence that is half the sentence that is being applied to Mr. Lopez on the basis of what is considered, the court called a minor on case with no particularly aggravating circumstances, is what the district court said, and yet doubled the applicable guideline. Thank you, counsel. Thank you. The cases heard will be submitted for decision, and we will be in recess for 10 minutes. All rise. This court is in recess for 10 minutes.
judges: Thomas, Silverman, Fisher